Inés Rodríguez Otero, demandante y apelada, *v.* Ell Tee, Inc., y Great American Indemnity Co., demandados y apelantes.

Núm. 8077.—*Sometido:* Enero 28, 1941. *Resuelto:* Enero 31, 1941.

[redacted]

*J. Valldejuli Rodríguez*, abogado de los apelantes; *E. Martínez Avilés*, abogado de la apelada.

EL JUEZ ASOCIADO SEÑOR DE JESÚS emitió la opinión del tribunal.

Se radicó la demanda de este pleito contra Ell Tee, Inc. y Great American Indemnity Co. en reclamación de los daños y perjuicios que alegó haber sufrido la demandante con motivo de la muerte de su hermana Enriqueta Rodríguez Otero al ser arrollada por el autocamión H-541, propiedad de la demandada Ell Tee, Inc., asegurado con la codemandada Great American Indemnity Co. La demandada Ell Tee, Inc. fué emplazada. No lo fué The Great American Indemnity Co. No compareció Ell Tee, Inc. y luego de anotada su rebeldía se señaló el caso en calendario especial para la celebración del juicio. Antes de celebrarse éste, la corte inferior llamó la atención al abogado de la demandante hacia el hecho de que la compañía aseguradora no había sido emplazada y entonces dicho abogado solicitó de la corte se diese a la demandante por desistida del pleito contra la referida compañía. Celebrado el juicio, la corte, con fecha 4 de noviembre de 1938, declaró con lugar la demanda contra Ell Tee, Inc. y el mismo día se notificó la sentencia a la demandada. Así las cosas, el 3 de diciembre siguiente Ell Tee, Inc. y la compañía aseguradora, Great American Indemnity

Co., radicaron en la corte inferior una moción jurada titulada "Moción para que se deje sin efecto la sentencia, se levante la rebeldía anotada y se admita la contestación que se acompaña." Se acompañó un proyecto de contestación debidamente jurada, a nombre de las dos compañías. El 8 del mismo mes la demandante radicó una extensa moción oponiéndose a que se dejara sin efecto la sentencia. Se celebró una audiencia, presentándose prueba en relación con la indicada moción, y el 26 de enero de 1939 la corte inferior la declaró sin lugar, dejando subsistente la sentencia dictada contra Ell Tee, Inc. Dos días después, el 28 de enero de 1939, las dos compañías radicaron un escrito de apelación contra la sentencia y contra la antedicha resolución. Desde entonces el caso ha venido a este tribunal dos veces con motivo de mociones para desestimar la apelación (56 D.P.R. 749), una vez por *certiorari* y finalmente en esta ocasión, en en que consideramos los méritos del recurso.

■■ The Great American Indemnity Co., si bien fué demandada en este pleito, nunca fué emplazada, y con anterioridad a la celebración del juicio la demandante desistió de su acción contra ella, continuando el pleito ·contra la otra demandada, no dictándose, naturalmente, sentencia alguna contra la referida compañía aseguradora. En tal virtud, no tiene derecho dicha compañía aseguradora a apelar de una sentencia que no fué dictada contra ella ni tampoco a invocar el artículo 140 del Código de Enjuiciamiento Civil para que se le exima de los efectos de dicha sentencia. A este efecto dice el citado artículo 140:

". . . La corte puede también, a su arbitrio . . . eximir a alguna persona o a sus representantes legales, de los efectos de una sentencia, orden u otro procedimiento *que se hubiese dictado contra ella,* por causa de equivocación, inadvertencia, sorpresa o excusable negligencia; . . ." (Bastardillas nuestras.)

Se argüirá que la compañía aseguradora podría tener algún interés en la sentencia, pero es lo cierto que la deman-

dante no estaba obligada a demandarla, y que dicha compañía en ningún momento solicitó intervenir en el pleito, como bien pudo hacerlo si es que consideraba que sus intereses podían ser lesionados al dictarse una sentencia contra la asegurada. Por consiguiente, careciendo la compañía aseguradora de personalidad para impugnar la sentencia, debemos descartar dicha demandada a los efectos de este pleito, y concentrar nuestra atención en los derechos de la única parte contra quien se dictó la sentencia: Ell Tee, Inc.

Como la sentencia contra Ell Tee, Inc. fué notificada el 4 de noviembre de 1938 y como la moción solicitando que la misma fuese dejada sin efecto no suspendió el término para apelar, puesto que no se trataba de una moción de reconsideración, al radicarse el escrito de apelación contra la sentencia el 28 de enero de 1939, había transcurrido con exceso el término de treinta días que concede la ley para interponer recurso de apelación. Sin embargo, la apelación de Ell Tee, Inc. contra la resolución de enero 26, 1939, se interpuso a tiempo. Por consiguiente, concentraremos nuestra atención a determinar si la corte inferior hizo o no buen uso de su discreción al denegar la moción de la demandada Ell Tee, Inc. solicitando se dejase sin efecto la sentencia dictada contra ella. Como hemos indicado anteriormente, la demanda fué dirigida desde el primer instante contra las dos compañías en el carácter indicado. También resulta de la prueba que se practicó en el incidente para dejar sin efecto la sentencia, que el abogado de la demandante, desde el 11 de agosto de 1938—cerca de dos meses antes de radicarse la demanda—, escribió a la compañía aseguradora dando los primeros pasos tendentes a una transacción del pleito. De dicha carta, *exhibit* 1 de la demandada, tomamos los siguientes párrafos:

"Comoquiera que a ustedes les consta que desde el primer momento he venido haciendo gestiones cerca de ustedes en mi carácter de abogado de doña Inés, y comoquiera que ella no me ha retirado la representación que me diera el primer día, y como por otra parte

dichas personas interesadas no le permiten, al parecer, que me ratifique por escrito el contrato verbal entre nosotros celebrado, deseo prevenirles para el caso de que, si se intentare burlar la buena fe de otro compañero, haciéndole entrega de este asunto, sin advertirle sobre los servicios que ya he prestado y sin hacerle saber que me habían dado su representación, me lo permitan saber ustedes tan pronto tuvieren conocimiento oficial de ello, para poder en tiempo tomar la acción correspondiente a los fines de proteger mis derechos.

"Hasta tanto estas dudas mías tengan su confirmación los hechos (sic), yo continúo ostentando la representación legal de la señora Inés Otero."

Desde la fecha últimamente citada en adelante, continuaron las negociaciones, llegándose a ofrecer por la aseguradora hasta $400, exigiendo la demandante la cantidad de $500 para transigir. No cesaron en ningún momento las negociaciones, pues como aparece de la carta de primero de octubre de 1938 (dda., exh. 3), en dicha fecha la aseguradora escribía al abogado de la demandante en los siguientes términos:

"Lcdo. E. Martínez Avilés,
Arecibo, P. R.

Re: 12–M–6221, Enriqueta Rodríguez
Otero vs. Louis Tuttman.

Muy señor nuestro y amigo:

Acusamos recibo de su carta del 21 de septiembre ppdo., en relación con el caso de epígrafe, la que no contestamos antes por estar esperando contestación de la Compañía en relación con este asunto.

Dada la circunstancia de encontrarse en Nueva York nuestro Sr. Carrión, a quien entre otros asuntos encomendamos el que nos ocupa, no dudamos que próximamente tendremos contestación de él, dándonos la resolución de la Compañía en lo que respecta a este caso, *oportunidad que aprovecharemos para dirigirnos a usted nuevamente dándole el contenido de dicha resolución.*

Atentamente,

(Fdo.) D. R. CARRIÓN, INC."

(Bastardillas nuestras.)

De la declaración no contradicha del testigo Rafael Porrata Doria, secretario y agente de reclamaciones de la

aseguradora, contestando el interrogatorio del abogado de la demandante, tomamos lo siguiente:

"P.—¿La demanda fué radicada el 4 de octubre?—Sí, señor.

"P.—¿Después hablé con usted en algún momento?—Sí, señor.

"P.—¿Dónde?—En la oficina.

"P.—¿Sobre qué?—Sobre eso mismo, que no contestara, que dejara en suspenso.

"P.—¿Hubo las palabras ésas?—Sí, señor; y si no, hubiéramos contestado de la misma manera que contestamos siempre. (T. de E., pág. 21.)

A preguntas del juez de la corte inferior, el mismo testigo declaró:

"P.—¿En alguna fecha el abogado les escribió que él no continuaba las conversaciones y que iba a seguir el pleito? ¿En alguna fecha el abogado les dijo, o escribió diciéndoles, que él daba por terminadas las conversaciones?—La única carta que a eso se refiere es la del 21 de septiembre, en la que dice: 'Si en el curso de la presente semana no ofrecieren ofertas, considero que tienen el propósito de no hacerlo;' pero esta carta se desvirtúa con un telefonema al representante nuestro, Mayol, para que Corbet transmitiera a Martínez (abogado de la demandante) que no teníamos prisa, porque tenía un año para demandar." (T. de E., pág. 21.)

Se observará por el *exhibit* 3 antes transcrito, la actitud en que se hallaba la compañía, por los términos en que contestó la carta de 21 de septiembre.

Es de presumir que la asegurada conocía estas negociaciones entre el abogado de la demandante y la compañía aseguradora, pues es de conocimiento público el hecho de que en las pólizas de seguro de automóviles se estipula que el asegurado, en caso de ser demandado, lo notificará a la compañía aseguradora remitiéndole copia de la demanda, emplazamiento, etc., para que la aseguradora pueda hacerse cargo del pleito, y que en caso de no cumplir el asegurado tal condición, la aseguradora queda exonerada de la obligación de la póliza. De modo, pues, que la demandada Ell Tee, Inc., en ausencia de un aviso de que la demandante había

terminado las negociaciones con la aseguradora, podía confiar en que éstas subsistían, y por esa razón no contestar la demanda, cosa que hubiera sido inútil si el pleito se transigía.

Podría alegarse que un oficial de la demandada Ell Tee, Inc. declaró en el juicio en rebeldía citado por la demandante, pero no consta del récord cuándo fué citado dicho testigo, para así determinar si en efecto tuvo la demandada tiempo suficiente para radicar su contestación y defenderse en el juicio. Opinamos que existió una excusa razonable por parte de Ell Tee, Inc., para no contestar oportunamente la demanda.

■ Existe además una circunstancia muy poderosa que debió mover la discreción del tribunal inferior a dejar sin efecto la sentencia, y es que ni de la demanda ni de la prueba surge que la demandante tenga una causa de acción contra Ell Tee, Inc.

El párrafo 6 de la demanda, donde se expresa el carácter con que la demandante interpone la acción, dice así:

"6. Que la demandante, en su carácter de hermana, es el pariente más cercano que dejara dicha Enriqueta Rodríguez Otero, y que ha sufrido daños y perjuicios por la suma de un mil sesenta dólares ($1,060), mil dólares en que calcula razonablemente los perjuicios ocasionados por los sufrimientos y pérdidas del cariño y afecto de su hermana y por la ayuda material que de la misma recibía, y sesenta dólares por los gastos en el entierro y funerales de su predicha hermana."

La demanda no contiene alegación alguna al efecto de que la demandante sea la única heredera de la interfecta ni que ésta falleciese sin otorgar testamento. Arguye, no obstante, la demandante, que la causa de acción por daños y perjuicios surge del artículo 1803 del Código Civil, y que por consiguiente la demandante, por ser hermana de la interfecta tiene derecho a indemnización.

En el caso de *Ruberté* v. *American Railroad Co.*, 52 D.P.R. 471, un padre obtuvo indemnización por la muerte de

su hijo, de quien no era heredero, ya que el hijo había dejado descendientes legítimos. Se dijo entonces por este tribunal:

"El hecho fué que Justo Ruberté no sólo tenía el deber de alimentar a su padre sino que en verdad contribuía a su sostenimiento. Habiéndose establecido la negligencia de la demandada, surgió en su consecuencia una causa de acción en favor de Pablo Ruberté por razón de la muerte de su hijo."

La decisión en el caso de *Ruberté,* supra, está predicada en el hecho de haber privado al padre, por el acto negligente de la demandada, de continuar recibiendo de su hijo los alimentos a que tenía derecho mientras éste viviese.

De acuerdo con el artículo 143 del Código Civil, los ascendientes y descendientes legítimos están obligados recíprocamente a darse alimentos; pero esa obligación no existe entre los hermanos a menos que concurran las circunstancias especificadas en dicho artículo, circunstancias que no resultan en este caso ni de la demanda ni tampoco de la prueba que sirvió de base a la sentencia. El citado precepto legal dice así:

"Art. 143.—Están obligados recíprocamente a darse alimentos en toda la extensión que señala el artículo precedente:

"1. Los cónyuges.

"2. Los ascendientes y descendientes legítimos.

"3. Los padres y los hijos legitimados y los descendientes legítimos de éstos.

"4. Los padres y los hijos ilegítimos y los descendientes legítimos de éstos.

"5. El adoptante y el adoptado, salvo lo dispuesto en el artículo 136.

"Los hermanos deben también a sus hermanos legítimos, aunque sólo sean uterinos o consanguíneos, los auxilios necesarios para la vida, *cuando por un defecto físico o moral, o por cualquiera otra causa que no sea imputable al alimentista, no puede éste procurarse su subsistencia.* En estos auxilios están, en su caso, comprendidos los gastos indispensables para costear la instrucción elemental y la enseñanza de una profesión, arte u oficio." (Bastardillas nuestras.)

La prueba no demuestra que la demandante dependiese de la interfecta para su subsistencia. Entendiéndolo así, la corte inferior, en su resolución de 26 de enero de 1939 antes citada, dice:

"Además, tuvimos oportunidad de conocer la prueba en este caso y estamos convencidos de que hubo causa de acción para entablar el litigio y aunque expusimos en' nuestra sentencia que había cierta circunstancia que no demostraba una negligencia grave, y *que la demandante no dependía para su sustento de lo poco que ganaba Enriqueta Rodríguez Otero*, hicimos justicia a la parte demandada concediendo una indemnización sumamente baja y es nuestra opinión que cualquier resolución que se dictara ahora, obligando a la parte demandante a otro pleito costoso, iría en contra de una buena administración de justicia.

"   *       *       *       *       *       *       *

"Estamos también convencidos que de acuerdo con el artículo 1803 y siguientes, que son la fuente primordial en Puerto Rico para la reclamación de daños y perjuicios por culpa o negligencia, la demandante tiene causa de acción aunque no haya dependido para su subsistencia de la causante, pues siendo heredera de la misma, la ley le reconoce el derecho, aun cuando no viva bajo el mismo techo o esté sujeta a una dependencia. La indemnización que se ha concedido es tan reducida que aun por los sufrimientos de la hermana demandante, que es el pariente más cercano y a quien corresponde la sucesión intestada, estaría justificada una compensación de esa índole."

Como hemos visto por las disposiciones del artículo 143 supra, y por lo resuelto en el caso de *Ruberté* v. *American Railroad, Co.*, supra, la demandante, por el solo hecho de ser hermana de la interfecta, aun en el supuesto de que dependiera de ella para su sostenimiento, no tiene derecho a indemnización por no concurrir las circunstancias enumeradas en el citado artículo 143. A falta de ascendientes y descendientes legítimos o legitimados, heredan los colaterales y los cónyuges, por el orden que se establece en los artículos 904 al 910 del Código Civil (ed. 1930); pero esto no implica que cada hermano o cada pariente colateral pueda

por sí solo establecer una demanda separadamente en reclamación de daños y perjuicios. Es necesario alegar y probar que el demandante o demandantes es o son el único o únicos herederos del interfecto, para que pueda prosperar la acción. En el caso de autos no sólo dejó de alegarse que la demandante fuera la única heredera de la interfecta, sino que tampoco se alegó que aquélla no hubiese dejado testamento válido, requisitos indispensables para que pueda ser llamada a la herencia la sucesión intestada.

Consideradas las circunstancias concurrentes, es decir, la negligencia excusable de la demandada Ell Tee, Inc. al no contestar la demanda, y la circunstancia adicional de que ni la demanda ni la prueba justifican la sentencia dictada, entendemos que la corte sentenciadora en bien de la justicia y haciendo uso de la discreción que le concede el artículo 140 del Código de Enjuiciamiento Civil, debió dejar sin efecto la sentencia dictada contra Ell Tee, Inc., conceder a la demandante un plazo razonable para enmendar su demanda, y en caso de hacerlo, conceder a la demandada Ell Tee, Inc. un plazo para radicar alegaciones, sin perjuicio de permitir intervenir a la Great American Indemnity Co., si lo solicitare, uniéndose a la demandada para oponerse a las pretensiones de la demandante.

*Por lo expuesto, procede declarar sin lugar los recursos interpuestos por la Great American Indemnity Co. contra la resolución de 26 de enero de 1939, dictada por la Corte de Distrito de Arecibo, y contra la sentencia de 4 de noviembre de 1938 dictada contra Ell Tee, Inc., y con lugar el interpuesto por esta última compañía contra la ameritada resolución de 26 de enero de 1939, que en su consecuencia se revoca, y dejar sin efecto la aludida sentencia, devolviéndose el caso a la corte inferior para ulteriores procedimientos no inconsistentes con esta opinión.*