Elvira Soto, demandante y apelante, *v.* Antonio Lucchetti, demandado y apelado. Urbano Soto, menor representado por su madre con patria potestad, Eugenia López, demandante y apelante, *v.* Antonio Lucchetti, demandado y apelado.

Núms. 8141 y 8142.—*Sometidos:* Marzo 12, 1941. *Resueltos:* Mayo 27, 1941.

*Enrique Tristani, Jr.,* abogado de la apelante; *Hon. Procurador General George A. Malcolm, R. García Cintrón, Subprocurador Auxiliar,* y *C. Domínguez Rubio,* abogado éste del Servicio de Riego, abogados del apelado.

El Juez Presidente Señor Del Toro emitió la opinión del tribunal.

Estos pleitos tienen un mismo origen, la muerte accidental de Angel Soto en la noche del diez y nueve de agosto de 1938, en el poblado de Paso Seco, Municipio de Santa Isabel.

El primero lo inició Elvira Soto, madre de Angel; el segundo, Urbano Soto, hijo natural del fallecido, y ambos se dirigen contra Antonio Lucchetti, Jefe y Director del Servicio de Electricidad en toda la Isla de Puerto Rico y de las Fuentes Fluviales que son de la propiedad del Pueblo del cual es empleado y lo era el día del accidente. La madre reclama diez mil dólares y el hijo otros diez mil.

Contra las demandas interpuso el demandado la excepción de falta de hechos suficientes para determinar una causa de acción en contra suya. Le dió la razón la corte de distrito, concediendo a los demandantes diez días para el archivo de

demandas enmendadas. Como el término transcurriera sin que se archivaran, pidió el demandado el pronunciamiento de las correspondientes sentencias sobre las alegaciones. Así lo hizo la corte, declarando las demandas sin lugar con imposición de costas y honorarios de abogado.

Los demandantes apelaron. Señalan en sus alegatos un solo error, a saber, el que imputan a la corte sentenciadora al resolver que las demandas no contenían hechos suficientes para determinar una causa de acción. Ambos recursos serán, pues, estudiados conjuntamente en esta opinión que servirá de base a las sentencias que dictemos resolviéndolos.

Los hechos, substancialmente, tales como se exponen en las demandas son:

Que el demandado como empleado del Pueblo de Puerto Rico es el encargado directo y único responsable del buen funcionamiento y conservación de todas las líneas conductoras de electricidad en la isla y el único con autoridad y obligación de ordenar reparaciones y nuevas instalaciones en las mismas siempre que sean de la propiedad del Pueblo;

Que una de las líneas del Pueblo conductora de corriente de alto voltaje que pasa por sobre el poblado de Paso Seco, de Santa Isabel, consta de tres alambres todos conductores y atraviesa la carretera insular de Santa Isabel a Coamo por un sitio donde hay más de cien casas habitadas por un millar de personas incluyendo niños, mujeres y hombres, una de las cuales era propiedad de Angel Soto. En ella vivían junto a él y por él sostenidos la madre y el hijo demandantes;

Que Angel Soto tenía veinte y cinco años de edad, era fuerte y trabajador y ganaba un dólar diariamente, y el diez y nueve de agosto de 1938, como a las nueve y media de la noche, al ir a acostarse oyó una voz que desde la calle gritaba que la casa se estaba quemando, quedando, al tirarse al patio, enredado en un alambre de la línea de alta tensión que no vió, ni sabía que estaba allí roto, muriendo a consecuencia de su contacto con él;

Que los alambres de la línea en aquel sitio para la fecha indicada se encontraban en pésimas condiciones de conservación, no tenían cubierta para protección de vidas y propiedades, estaban flojos de poste a poste siendo juguete continuo del viento que al unirlos produjo a veces conatos de incendio, habiéndose dado aviso de ello por los vecinos en distintas ocasiones a los encargados de la línea en la localidad y directamente al demandado;

Que dichos alambres eran viejos y estaban inservibles, condición que conocía el demandado, y que al ponerse en contacto con la casa de Angel Soto, la casa empezó a quemarse por una esquina;

Que el demandado fué negligente al permitir que alambres de tan alto voltaje permanecieran en esas pésimas condiciones, a sabiendas de que en aquel sitio habitaban tantas personas y había una vía pública de mucho tránsito y no ordenó la instalación de las hamacas acostumbradas para recoger antes de llegar a tierra cualquier alambre que pudiera partirse, siendo negligente además al no ordenar que por los empleados bajo su dirección se renovaran los alambres que sabía de propio conocimiento que estaban en malas condiciones, máxime cuando fué de ello avisado antes del accidente;

Que la muerte de Angel Soto se debió única y exclusivamente a la culpa y negligencia del demandado y a su descuido y temeraria imprudencia al permitir que por alambres en aquellas condiciones se trasmitiera un alto voltaje eléctrico;

Que la rotura y caída del alambre que ocasionó la muerte de Angel Soto se debió exclusivamente a su condición de inservibilidad. Al soplar el viento lo unió a otro de la misma línea y por no estar protegido cayó; y

Que a virtud de la muerte del hijo y padre, respectivamente, los demandantes han pasado hambre y vicisitudes, viéndose privados de su protección y ayuda y por ello y por sus angustias y sufrimientos morales y físicos, reclaman del demandado que es el responsable las sumas ya indicadas.

■ Sostiene en primer término el demandado que estos pleitos por su naturaleza y por sus alegaciones lo son contra El Pueblo de Puerto Rico aunque se dirijan contra el demandado en su condición de empleado, ya que los actos que se imputan como causantes de los daños, surgen de su cargo como empleado del Pueblo que es el dueño del sistema de Utilización de Fuentes Fluviales al que corresponden las líneas trasmisoras de electricidad, uno de cuyos alambres al romperse causó la muerte de Soto. En una palabra, el demandado alega que El Pueblo es aquí la "empresa", el "superior" que debe responder.

La ley reguladora de la acción ejercitada está comprendida en los siguientes preceptos del Código Civil, ed. 1930:

"Artículo 1802.—El que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado.

"Artículo 1803.—La obligación que impone el artículo anterior es exigible, no sólo por los actos u omisiones propios, sino por los de aquellas personas de quienes se debe responder.

*     *     *     *     *     *     *

"El Pueblo de Puerto Rico es responsable en este concepto cuando obra por mediación de un agente especial; pero no cuando el daño hubiese sido causado por el funcionario a quien propiamente corresponda la gestión practicada, en cuyo caso será aplicable lo dispuesto en el artículo anterior.

*     *     *     *     *     *     * "

Se trata de una sentencia sobre las alegaciones. Según la demanda, la certeza de cuyos hechos fué admitida a los fines de la excepción, el dueño de Fuentes Fluviales o sea la empresa lo es El Pueblo de Puerto Rico y de no estar limitada la responsabilidad del Pueblo por la propia ley que la establece al caso en que actúa por medio de un agente especial, resolveríamos que la razón estaba por completo de parte de la contención del demandado sin necesidad de más investigación.

Pero la limitación existe y precisa resolver si el demandado actuó o no como un agente especial.

Comentando Manresa el artículo 1903 del Código Civil Español que fija la responsabilidad del Estado en términos iguales al nuestro, dice:

"La misma consideración anterior sirve de fundamento a la obligación impuesta al Estado; pero debe tenerse muy en cuenta respecto de ella que, según tiene declarado el Tribunal Supremo en sentencia de 18 de mayo de 1904, dicha responsabilidad se limita tan sólo a los daños ocasionados por los empleados del mismo, cuando éstos obran como agentes especiales suyos, y no tiene que responder de ellos cuando hubiesen sido causados por los funcionarios a quienes corresponda por razón de su cargo la gestión practicada, porque sólo en el primer caso cabe presumir en aquél la culpa o negligencia que es la base generadora en esta clase de obligaciones.

"Por agente especial, en el sentido en que se emplean estas palabras en el art. 1903, deben entenderse, con arreglo a dicha sentencia, 'el que recibe un mandato o comisión concreta o determinada, *ajena al ejercicio de su cargo*, si es funcionario público, para que en representación del Estado y obligándole como mandatario cumpla el encargo que se le confíe, cuyo concepto no puede alcanzar a un agente ejecutivo, que es un empleado de la Administración activa que, bajo su responsabilidad, ejerce las funciones normales y propias de su cargo, reguladas por la ley o por los Reglamentos'; doctrina perfectamente aplicable a todos los demás funcionarios públicos, que al llevar a cabo los actos determinantes del perjuicio causado, se limitaron a desempeñar las funciones propias del destino desempeñadas por los mismos." 12 Manresa, Comentarios al Código Civil Español 558, 4ta. ed.

Aplicada la ley a la luz del comentario y la jurisprudencia que cita a los hechos del caso, sólo cabe resolver que El Pueblo no es responsable porque el demandado no actuó como su agente especial si que en el ejercicio regular de las funciones de su cargo.

La ley de abril 13, 1916, pág. 155, enmendada en 1928, pág. 131, autorizando a las cortes de distrito a conocer de pleitos contra El Pueblo en ciertos casos, no altera esa conclusión porque como se decidió por esta misma corte en *Ortiz* v. *Pueblo,* 44 D.P.R. 153, 154:

·''Por tal disposición El Pueblo de Puerto Rico consintió en ser demandado en ciertos casos en que hubiera una causa de acción bajo la ley que ya estaba en vigor. La enmienda de 1928 no creó ninguna causa de acción nueva. Era una renuncia de inmunidad contra cualquier acción para exigir una responsabilidad existente, pero no constituía una renuncia de inmunidad en casos en los cuales no existiera ninguna responsabilidad legal en que basar un pleito. Véanse 36 Cyc. 915; *Saurí y Subirá* v. *Sepúlveda*, 25 D.P.R. 242; y *Austin W. Jones Co.* v. *State*, 119 A. 577.

Según los términos del artículo 1804 del Código Civil (1803 de la Revisión de 1930) El Pueblo de Puerto Rico no es responsable de daños y perjuicios excepto cuando obra por mediación de un agente especial.''

██ Ahora bien, no siendo responsable El Pueblo, ¿quién lo es? La ley es terminante. Dice que cuando el daño se cause por el funcionario a quien propiamente corresponda la gestión practicada, será aplicable lo dispuesto en el artículo anterior, a saber: el que por acción u omisión causa daño a otro interviniendo culpa o negligencia, está obligado a repararlo.

Resolver lo contrario sería excluir de responsabilidad por sus actuaciones u omisiones culpables o negligentes a los funcionarios públicos por el solo hecho de ser tales funcionarios, no obstante el daño que a otras personas causaren. Y ello no tendría justificación alguna dentro del espíritu de nuestras leyes.

Comentando el Doctor Llerena el artículo 1112 del Código Civil Argentino que establece la responsabilidad de los funcionarios públicos en casos de esta naturaleza, cita el dictamen del Procurador Fiscal de la nación que aceptó en todas sus partes la Cámara de la Capital al resolver la apelación en un caso contra el intendente municipal de la Capital por daño ocasionado a un particular en el ejercicio de sus funciones. Al dictamen corresponden los siguientes párrafos:

''Aunque en Francia y en otras naciones monárquicas que la han seguido, se haya establecido así efectivamente ese sistema pernicioso que a cada paso viene a encarar a los particulares con los ministerios,

720

dificultando sobremanera las reclamaciones por abusos de los funcionarios públicos, ha sido desechado en la Gran Bretaña y los Estados Unidos, donde la responsabilidad de aquéllos es directa ante los Tribunales. (Lieber, La libertad civil, t. 1, cap. 10, núm. 11, pág. 119. Tocqueville, La democracia en América, lib. 1, cap. 6, sec. 2ª, pág. 75; Paul Odent, nota al art. 951 de Story.)

"Habiendo adoptado nosotros por modelo la Constitución norteamericana, hallamos en nuestras instituciones consignada la misma doctrina derivada de los principios fundamentales de aquélla (Ley nacional de septiembre de 1863, art. 3º.), sin que, por tanto, para responsabilizar a un funcionario sea indispensable llevar la queja gradualmente hasta el Superior antes de recurrir a los Tribunales en demanda de justicia por cualquier abuso.

"En casos tales, los Tribunales ordinarios juzgarán ciertamente sobre actos administrativos, pero examinándolos exclusivamente bajo una sola faz, la del abuso que pueda haber agraviado al particular en sus derechos perfectos; y no por eso debe recelarse el que se dificulte o trabe la administración, pues no es de temerse seguramente en manera alguna el que sin fundamento de justicia se multipliquen reclamaciones de suyo bien difíciles." 4, Llerena. Concordancias y Comentarios al Código Civil Argentino, 184, 4ª. ed.

Y la Enciclopedia Jurídica Española en su trabajo sobre "Funcionario Público" del que es autor su colaborador D. Gonzalo del Castillo Alonso, refiriéndose a la responsabilidad civil del funcionario, expresa, en parte, lo que sigue:

"Desentrañando más el concepto de la culpa, base indudable de la responsabilidad civil, supone, a no dudarlo, la preexistencia de un deber jurídico, porque el que falta a un deber moral no incurre en aquélla; la realización de un acto positivo o negativo, porque son imputables tanto las acciones como las omisiones y la infracción de aquel deber preexistente que trae como consecuencia la lesión del derecho ajeno, aun sin intención de ocasionarla, porque si dicha intención existiera, la *culpa* se convertiría en *dolo*. A mayor abundamiento, si, como se lee en el art. 1,902 de nuestro Código civil, 'el que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado', este daño no podrá ser indemnizado al particular por el funcionario que le haya producido si no se demuestra al mismo tiempo que al ser negligente dicho funcionario y faltar al deber que el particular puede exigir

de él, falta asimismo con sus actos u omisiones a sus deberes frente a la sociedad política a que pertenezca." 16 Enciclopedia Jurídica Española 874.

Según la demanda el funcionario demandado en estos casos, como empleado del Pueblo de Puerto Rico tenía a su cargo y era el responsable del buen funcionamiento y conservación de la línea conductora de electricidad a que pertenecía el alambre que se rompió y causó la muerte de Soto y fué negligente porque conociendo personalmente el mal estado de la línea a que se debió la rotura por habérsele dado cuenta de ello dejó de repararla negligentemente. Si ello es así y hasta ahora está admitido que lo es, su responsabilidad, de acuerdo con los hechos y la ley, es manifiesta.

La otra cuestión que dentro del campo de la excepción se discute es la de que no alegando las demandas que los demandantes sean los únicos herederos de Soto, no aducen causa de acción, sosteniéndose además que sólo cabe una causa de acción que corresponde a todos los herederos.

La cuestión no fué resuelta por la corte de distrito, pero le fué planteada y se insiste con razón en que debemos decidirla. Los demandantes descansan en el caso de *Ruberté* v. *American Railroad Co.*, 52 D.P.R. 471. El demandado impugna esa decisión e invoca la de *Méndez* v. *Serracante*, 53 D.P.R. 849.

Hace sólo unos meses esta corte, en el caso de *Rodríguez* v. *Ell Tee, Inc.*, 57 D.P.R. 948, 954, se expresó como sigue:

"La demanda no contiene alegación alguna al efecto de que la demandante sea la única heredera de la interfecta ni que ésta falleciese sin otorgar testamento. Arguye, no obstante, la demandante, que la causa de acción por daños y perjuicios surge del artículo 1803 del Código Civil, y que por consiguiente la demandante, por ser hermana de la interfecta tiene derecho a indemnización.

"En el caso de *Ruberté* v. *American Rairoad Co.*, 52 D.P.R. 471, un padre obtuvo indemnización por la muerte de su hijo, de quien no era heredero, ya que el hijo había dejado descendientes legítimos. Se dijo entonces por este tribunal:

" 'El hecho fué que Justo Ruberté no sólo tenía el deber de alimentar a su padre sino que en verdad contribuía a su sostenimiento. Habiéndose establecido la negligencia de la demandada, surgió en su consecuencia una causa de acción en favor de Pablo Ruberté por razón de la muerte de su hijo.'

"La decisión en el caso de *Ruberté,* supra, está predicada en el hecho de haber privado al padre, por el acto negligente de la demandada, de continuar recibiendo de su hijo los alimentos a que tenía derecho mientras éste viviese.

"De acuerdo con el artículo 143 del Código Civil, los ascendientes y descendientes legítimos están obligados recíprocamente a darse alimentos; pero esa obligación no existe entre los hermanos a menos que concurran las circunstancias especificadas en dicho artículo, circunstancias que no resultan en este caso ni de la demanda ni tampoco de la prueba que sirvió de base a la sentencia. . . . .

"Como hemos visto por las disposiciones del artículo 143 supra, y por lo resuelto en el caso de *Ruberté* v. *American Railroad Co.,* supra, la demandante, por el solo hecho de ser hermana de la interfecta, aun en el supuesto de que dependiera de ella para su sostenimiento, no tiene derecho a indemnización por no concurrir las circunstancias enumeradas en el citado artículo 143. A falta de ascendientes y descendientes legítimos o legitimados, heredan los colaterales y los cónyuges, por el orden que se establece en los artículos 904 al 910 del Código Civil (ed. 1930); pero esto no implica que cada hermano o cada pariente colateral pueda por sí solo establecer una demanda separadamente en reclamación de daños y perjuicios. Es necesario alegar y probar que el demandante o demandantes es o son el único o únicos herederos del interfecto, para que pueda prosperar la acción. En el caso de autos no sólo dejó de alegarse que la demandante fuera la única heredera de la interfecta, sino que tampoco se alegó que aquélla no hubiese dejado testamento válido, requisitos indispensables para que pueda ser llamada a la herencia la sucesión intestada."

En este caso según consta del resumen que hicimos de las demandas se alegó en ellas que tanto la madre como el hijo vivían con el padre y de él dependían para su subsistencia y ello sería suficiente de acuerdo con el caso de *Ruberté,* supra, y con el propio de *Rodríguez,* supra. Creemos, sin embargo, que no proceden dos acciones separadas, sino una conjunta,

y que debe alegarse no sólo la condición de heredero o herederos y dependiente o dependientes si que además que los demandantes son los únicos herederos o dependientes del finado.

Habiendo llegado a las anteriores conclusiones, *procede la revocación de las sentencias apeladas, declarándose sin lugar las excepciones previas en cuanto a que las demandas no aducen hechos suficientes en contra del demandado y con lugar en cuanto a que no alegan en el recurso núm. 8141 que la demandante Elvira Soto, madre de Angel Soto, sea la única heredera de su hijo fallecido, y en el recurso núm. 8142 que el demandante, Urbano Soto, hijo natural reconocido de Ángel Soto, sea el único heredero del finado, debiendo consolidarse en uno ambos pleitos al que podrán y deberán asociarse todos los que puedan tener a ello derecho, concediéndose al efecto un término de veinte días contado a partir del en que se reciba el mandato en la corte inferior para el archivo de la demanda enmendada.*