JUAN HERNÁNDEZ NIEVES y LAURA MATOS DE HERNÁNDEZ, demandantes y apelantes, *v.* RAMÓN ANTONIO FOURNIER, demandado y apelado.

Número 10689.

*Sometido:* 1 de mayo de 1957. *Resuelto:* 26 de junio de 1957.

*Edelmiro Martínez Rivera,* abogado de los apelantes; *F. Fernández Cuyar,* abogado del apelado.

EL JUEZ ASOCIADO SEÑOR SALDAÑA emitió la opinión del Tribunal.

La cuestión básica que se plantea en este caso es la siguiente: en una demanda por los daños y perjuicios, materiales y morales, que sufrieron personalmente los reclamantes como consecuencia de la muerte ilegal de su hija mayor de edad, ¿es indispensable alegar que los padres demandantes son los *únicos* herederos o que ellos eran las *únicas* personas que dependían de la víctima? El tribunal de instancia resolvió que sí, aplicando la doctrina establecida en los casos de *Méndez* v. *Serracante,* 53 D.P.R. 849 (1938) y *Soto* v. *Lucchetti,* 58 D.P.R. 713 (1941). Creemos, sin embargo, que dicha doctrina jurisprudencial resulta inconciliable con lo dispuesto en el art. 1802 de nuestro Código Civil (ed. 1930), 31 L.P.R.A. sec. 5141, y además que fué descartada implícitamente por

nuestras decisiones posteriores en *Travieso* v. *Del Toro*, 74 D.P.R. 1009 (1953) y *Vázquez* v. *Pueblo*, 76 D.P.R. 594 (1954).

Veamos los hechos. Ante el tribunal de instancia se presentó una demanda, solicitando indemnización por la muerte ilegal de Iris Nereida Hernández Matos, fundada en las siguientes alegaciones: "(1) Los demandantes formulan la presente reclamación en su carácter y condición de padres legítimos de Iris Nereida Hernández Matos; (2) En 7 de septiembre de 1950, el demandado Ramón Antonio Fournier, voluntariamente y mediante el uso de fuerza y violencia, estranguló a la hija de los demandantes dicha Iris Nereida Hernández Matos, y sepultó el cadáver secretamente en una fosa clandestina en el Cementerio Fournier, en Isla Verde; (3) En la fecha anteriormente indicada, Iris Nereida Hernández Matos solamente tenía 23 años de edad, gozaba de buena salud y con su hija habida en su matrimonio con el demandado, Iris Rosa Fournier Hernández, vivía con los demandantes, en el hogar de éstos en Santurce, Puerto Rico, compartiendo con ellos su cariño y afecto y proporcionándole ayuda espiritual, material y económica; (4) Con motivo de la muerte de Iris Nereida Hernández Matos, causada por el demandado como se alega, los demandantes han padecido intensas angustias mentales y han sufrido fuertes dolores físicos y morales y han quedado privados por el resto de su vida de la compañía y del afecto y cariño de su dicha hija y de toda la ayuda material y moral que ella les proporcionaba, y tuvieron que incurrir en gastos y desembolsos para sus funerales." El demandado pidió la desestimación, alegando que la referida demanda "... no contiene hechos suficientes que justifiquen la concesión de remedio alguno a los demandantes". El tribunal a quo declaró que "... Si bien los padres que reciben alimentos de un hijo legítimo tienen derecho a reclamar daños y perjuicios por la muerte de éste cuando es ocasionada por culpa o negligencia de un tercero, ... en la de-

manda que interpongan a esos efectos deberán alegar, además de su condición de herederos o dependientes, que son los únicos herederos o dependientes del hijo fenecido. Estas alegaciones faltan en la demanda de este caso y debe por ello declararse con lugar la moción para desestimar...". Se concedió a los demandantes un término para presentar una demanda enmendada. Habiendo alegado éstos que su demanda no era susceptible de enmiendas, el tribunal a quo dictó sentencia definitiva desestimando la acción. Véanse 32 L.P.R.A. sec. 1281; *Quilinchini* v. *Comisión de Servicio Público*, 63 D.P.R. 681 (1944). Cf. *Rodríguez* v. *Tribunal Municipal y Ramos*, 74 D.P.R. 656, 664–666 (1953). Los demandantes interpusieron el presente recurso de apelación.

El punto de partida en este caso es la regla de que la acción de daños y perjuicios por la muerte de una persona dimana del art. 1802 de nuestro Código Civil. Véanse *Orta* v. *P. R. Ry., Lt. & P. Co.*, 36 D.P.R. 743 (1927) ; *Ruberté* v. *Am. R. R. Co.*, 52 D.P.R. 471 (1938) ; *Díaz* v. *Autoridad de Fuentes Fluviales*, 71 D.P.R. 931 (1950) ; *Travieso* v. *Del Toro*, 74 D.P.R. 1009 (1953) ; *Vázquez* v. *Pueblo*, 76 D.P.R. 594 (1954) ; *Fournier* v. *Fournier*, 78 D.P.R. 430 (1955). Según el citado artículo, que establece uno de los principios más fundamentales de nuestro orden jurídico—el de la responsabilidad aquiliana por hechos propios—todo perjuicio, material o moral, da lugar a reparación si concurren tres requisitos o elementos: *primero*, se establece la realidad del daño sufrido; *segundo*, existe un nexo causal entre el daño y la acción u omisión de otra persona; y *tercero*, dicho acto u omisión es culposo o negligente. 4 Castán, Derecho Civil Español (8a ed., 1956) 814 y sigtes.; Puig Peña, Tratado de Derecho Civil Español, tomo IV, vol. 2 (1951) 537 y sigtes.; 2 Díaz Pairó, Teoría General de las Obligaciones (3a ed., 1954) 51 y sigtes.; Borrell, Responsabilidades Derivadas de la Culpa Extracontractual Civil (1942) 60–76, 157–177. Ese precepto "... no admite limitación ni excepción de clase

alguna; y por consiguiente el causante de un daño debido a culpa o negligencia, sean las que sean sus consecuencias, está obligado a repararlo, a que el perjudicado le desaparezcan los efectos del daño sufrido." Borrell, op. cit., 169. Así, la forma de realizar el daño es indiferente. Y por el mismo fundamento en nuestra jurisprudencia son resarcibles tanto los daños materiales como los daños puramente morales. Véanse *Rivera* v. *Rossi*, 64 D.P.R. 718 (1945); *Muriel* v. *Suazo*, 72 D.P.R. 370 (1951); *Vázquez* v. *Pueblo*, 76 D.P.R. 594 (1954).

Parece fuera de duda que el perjuicio causado por la muerte de una persona a menudo alcanza por repercusión a varias otras personas, independientemente de los daños que la lesión mortal hace sufrir a la víctima inicial.[1] Sufren daños de orden patrimonial aquéllos a cuyas necesidades atendía el finado y también los que no recibían de él alimentos en forma real y efectiva, pero sí tenían derecho a recibirlos y, en consecuencia, pierden la esperanza fundada y razonable de esos beneficios futuros. Por otra parte, sufren daños morales las personas vinculadas por lazos de parentesco, afecto y cariño con el difunto. Poco importa que se trate de un solo acto torticero. El perjuicio material y moral que causa la muerte ilegal de un ser humano puede refluir sobre varias personas. Y en tal caso, cada una de éstas adquiere una

---

[1] No es necesario resolver ahora si el derecho de exigir indemnización por los mismos es transmisible a sus herederos. En *Travieso* v. *Del Toro*, 74 D.P.R. 1009, 1015–1016 (1953) (por vía de *dictum*) adoptamos la doctrina que dicha causa de acción es personalísima del causante y se extingue con su muerte. El Tribunal Supremo de España ha seguido el mismo criterio en las Sentencias de 20 de diciembre de 1930 (197 Jur. Civ. 612) y 8 de abril de 1936 (224 Jur. Civ. 80). En el supuesto de muerte instantánea, se aduce también que el difunto nunca llegó a poseer ni por un instante el derecho a ser indemnizado, de suerte que el mismo no ingresó en el caudal hereditario ni se transmitió a los herederos. Véase Borrell, op. cit., 262–264. Recientemente, en la Sentencia de 17 de febrero de 1956 (40 Rev. de Derecho Privado 485–487), el Tribunal Supremo Español señaló (a) que ciertos perjuicios de carácter patrimonial, como los gastos de entierro y funeral, constituyen cargas hereditarias, según lo dispuesto en el Código Civil, y por tanto dan lugar a una acción de indemnización a favor de los herederos; (b) que otros perjuicios materiales, cuando no se

acción independiente contra el causante de la muerte ilegal, pues la fuente de la responsabilidad es precisamente el perjuicio particular y personal sufrido por cada uno de los demandantes. De ahí que dichas reclamaciones no surgen de un derecho hereditario: cada demandante solicita indemnización por el daño que a él personalmente le causó la muerte y no actúa como heredero, aunque lo sea, ya que no reclama por los daños y perjuicios que sufrió el finado.

Así, nuestra jurisprudencia reconoce que los parientes más próximos de la víctima tienen derecho a exigir indemnización por las daños materiales y morales que sufren personalmente, sean o no herederos del interfecto. En *Ruberté* v. *Am. R. R. Co.*, 52 D.P.R. 471 (1938), resolvimos que el padre del occiso tenía derecho a indemnización por los daños que había sufrido personalmente, aunque los únicos herederos de la víctima eran sus hijos legítimos, diciendo "... no importa que Pablo Ruberté (el demandante) fuera o no un heredero". Posteriormente en *Travieso* v. *Del Toro*, 74 D.P.R. 1009 (1953), declaramos que "... no es necesario que (el demandante) sea técnicamente un heredero, siendo suficiente que él sea padre de la víctima ... y que él sufra daños y perjuicios en su condición y relación de padre, considerando la destrucción de su derecho real o potencial a alimentos y la paralización permanente de los beneficios prospectivos que él podía

---

trata de muerte instantánea, como los de clínica y farmacia, impedimento para el trabajo, etc., dan nacimiento a una acción de indemnización a favor del causante que es transmisible a sus derechohabientes; y por último (c) que, en cuanto al daño moral constituído por el dolor que sufre la víctima, sigue constituyendo aún en la doctrina de la jurisprudencia española un problema el de la transmisibilidad de la acción competente a los herederos, sobre todo en el supuesto de muerte instantánea. A favor de la transmisibilidad en todos los casos, véanse 6 Planiol y Ripert, Tratado Práctico de Derecho Civil Francés (Trad. Esp., 1936) 896–897; 2 Mazeaud y Mazeaud, *Traité Theorique et Pratique de la Responsabilité Civile* (4a ed. 1949) 750–772; 2 Savatier, *Traité de la Responsabilité Civile* (2a ed. 1951) 108–126; 2 Mazeaud, *Lecons de Droit Civil* (1956) 546–552. En sentido opuesto, 2 Ripert y Boulanger, *Traité Elementaire de Droit Civil de Planiol* (2a ed., 1947) 346–347. Cf. García Martínez, ¿Debe reconocerse la acción hereditaria por muerte ilegal? 15 Revista del Colegio de Abogados de Puerto Rico 319 (1955).

haber recibido de su hijo." También señalamos en dicho caso que el padre tenía derecho a indemnización por los daños morales que le causó la muerte de su hijo, no obstante el hecho de que existía una hija natural reconocida del occiso, que era su única heredera en virtud de un testamento otorgado por éste, pues ". . . está envuelto un derecho propio y no un derecho hereditario. . ." Además, en *Vázquez* v. *Pueblo,* 76 D.P.R. 594 (1954), reconocimos a los hermanos del interfecto el derecho a obtener indemnización por los daños morales sufridos personalmente por ellos, sin necesidad de demostrar daños pecuniarios, expresando que dicha acción ". . . no nace de derecho hereditario alguno, ya que no forma parte de la herencia del finado, sino que es una causa de acción individual de todas aquellas personas que sufren personalmente daños y perjuicios en virtud de la muerte de otra persona". En igual forma, la jurisprudencia española establece que los parientes más allegados del interfecto no necesitan invocar, ni mucho menos justificar, la cualidad de herederos para reclamar indemnización por los daños morales y materiales que se les causa. Véanse, entre otras, las Sentencias de 20 de diciembre de 1930 (197 Jur. Civ. 712), de 27 de abril de 1953 (42 Jur. Civ., 2a s., 752) y de 17 de febrero de 1956 (40 Revista de Derecho Privado 485–487). Y la doctrina sostiene el mismo criterio: Borell, op. cit., 261–264; Colombo, Culpa Aquiliana (1944) 708 y sigtes.; Colin y Capitant, Curso Elemental de Derecho Civil (3a ed. esp. 1951) 831 y sigtes.; 2 Mazeaud y Mazeaud, op. cit. 700–706; 2 Savatier, op. cit. 108 y sigtes.; 2 Ripert y Boulanger, op. cit. 345 y sigtes.; 2 Mazeaud, *Lecons de Droit Civil* (1956) 546 y sigtes.; 6 Planiol y Ripert, *Traité Pratique de Droit Civil Francais* (2a ed., 1952) 753 y sigtes.

A base de los principios expuestos, la solución del problema que se plantea en el presente caso sería terminante, si no fuese por la enorme confusión que introdujo en nuestro derecho el art. 61 del Código de Enjuiciamiento Civil. 32

L.P.R.A. sec. 311.(²)   En efecto, la fuente de la responsabilidad es el perjuicio particular y personal sufrido por cada uno de los más próximos parientes del interfecto, y no un derecho hereditario.   De modo que no puede existir ninguna clase de solidaridad entre las distintas acciones que surgen contra el causante de la muerte ilegal:  cada acción de indemnización se refiere a un daño distinto y separado, aunque el acto torticero sólo cause inicialmente la muerte de una persona.   En rigor, la situación no puede distinguirse de la que existe cuando la falta inicial causa directamente daños y perjuicios a varias personas.   Por ejemplo, si en un accidente debido a la culpa o negligencia del conductor de un vehículo varios pasajeros sufren lesiones graves, nadie pondría en duda que cada uno de ellos tiene una acción totalmente independiente de las que pueden ejercitar los demás.

(²) Fué copiado del Código de Procedimiento Civil de California (West's Ann. Cal. Codes, Civil Procedure, Vol. 14, sec. 377) y corresponde al pie de la letra con el inciso *k* de la Regla 17 de Enjuiciamiento Civil. (32 L.P.R.A. Ap., R. 17*k*).   Dispone como sigue:

"Cuando la muerte de una persona mayor de edad fuere causada por el acto ilegal o negligencia de otra, sus herederos o representantes personales podrán entablar demanda por daños y perjuicios contra la persona causante de la muerte; y si dicha persona estuviere empleada por otra, responsable de su conducta, podrán también entablarla contra ésta.   En toda demanda con arreglo a esta sección y a la precedente, se regulará el importe de los daños y perjuicios que fueren justos, vistas todas las circunstancias del caso."

A menudo hemos apuntado que en Puerto Rico era innecesario adoptar dicho artículo porque nuestro derecho nunca ha reconocido la regla de que la acción de daños y perjuicios se extingue con la muerte de la víctima.   Y nuestra jurisprudencia demuestra claramente las dificultades provocadas por la coexistencia del art. 1802 del Código Civil y del art. 61 del Código de Enjuiciamiento Civil.   Véanse, entre otros, *Rosado* v. *Ponce Ry., Lt. & P. Co.*, 20 D.P.R. 564 (1914); *Díaz* v. *P.R. Ry., Lt. & P. Co.*, 21 D.P.R. 78 (1914); *Colón* v. *P.R. Ry., Lt. & P. Co.*, 26 D.P.R. 270 (1918); *Rivera* v. *Reyes*, 31 D.P.R. 440 (1923); *Arreche* v. *P. R. Ry., Lt. & P. Co.*, 31 D.P.R. 445 (1923); *Maldonado* v. *Hamilton*, 32 D.P.R. 224 (1923); *Torres* v. *Am. R. R. Co.*, 34 D.P.R. 689 (1925); *Silva* v. *Carbonell*, 35 D.P.R. 244 (1926); *Carbou Rodríguez* v. *Mir*, 36 D.P.R. 809 (1927); *Sucn. Peraza* v. *Marín*, 40 D.P.R. 355 (1929); *Pérez* v. *Sucrs. de M. Pérez & Co.*, 41 D.P.R. 852 (1931); *López* v. *Am. R. R. Co. of P. R.*, 50 D.P.R. 1 (1936); *Ruberté* v. *Am. R. R. Co.*, 52 D.P.R. 471 (1938); *Méndez* v. *Serracante*, 53 D.P.R. 849 (1938); *Rodríguez* v. *Ell Tee, Inc.*,

Sin embargo, partiendo de la premisa errónea de que la acción por muerte ilegal es siempre de naturaleza hereditaria (por razón de lo dispuesto en el aludido art. 61 del Código de Enjuiciamiento Civil), establecimos en *Carbou Rodríguez* v. *Mir*, 36 D.P.R. 809 (1927) que "... la acción debe entablarse por todos los herederos conjuntamente o por uno sólo a beneficio de todos". Esta norma fué reiterada en *Méndez* v. *Serracante*, 53 D.P.R. 849 (1938), diciendo que "... cuando los herederos demandan deben hacerlo uno a nombre de todos o unirse todos los demandantes, y si alguno rehusare asociarse a éstos, deberá aparecer éste como demandado, consignándose el motivo en la demanda en armonía con el artículo 66 del [Código de Enjuiciamiento Civil]. Y es que la acción que contempla la ley es una y una sola también debe ser la sentencia que a favor de los herederos se dicte por el valor total

57 D.P.R. 948 (1941); *López* v. *Rexach*, 58 D.P.R. 143 (1941); *Rivera* v. *Olabarrieta*, 58 D.P.R. 432 (1941); *Soto* v. *Lucchetti*, 58 D.P.R. 713 (1941); *Roses* v. *Juliá*, 67 D.P.R. 518 (1947).

La confusión es aún mayor cuando se trata de los daños y perjuicios que causa la muerte de un menor. En ese caso hay que reconciliar lo dispuesto en el art. 60 del Código de Enjuiciamiento Civil y en la Regla 17 (*j*) con los principios del Código Civil. Se ha dicho que la acción corresponde sólo a las personas que aparecen enumeradas en el art. 60. Por otro lado, también hemos declarado que la causa de acción existe "a favor de la sociedad de gananciales". Véanse *Izquierdo* v. *Andrade*, 44 D.P.R. 727 (1933); *Jorge* v. *Umpierre*, 49 D.P.R. 78 (1935); *Parrilla* v. *Loíza Sugar Co.*, 52 D.P.R. 241 (1937); *Ramos* v. *Sucn. Serrallés*, 51 D.P.R. 343 (1937); *Castro* v. *González*, 58 D.P.R. 368 (1941); *Suárez* v. *Saavedra*, 60 D.P.R. 605 (1942); *Asencio* v. *Am. R. R. Co.*, 66 D.P.R. 227 (1946); *Vargas* v. *Alers*, 69 D.P.R. 231 (1948). Además dichas disposiciones se refieren no sólo al caso de muerte, sino al de un menor que sufre lesiones por culpa de otro. Y si el menor no muere surge también una acción a favor de éste. Véanse *Rivera* v. *Reyes*, 31 D.P.R. 440 (1923); *Cabrera* v. *Boscio*, 38 D.P.R. 314 (1928); *Acha* v. *Nevárez*, 59 D.P.R. 235 (1941); *Carrasquillo* v. *American Missionary Assoc.*, 61 D.P.R. 867 (1943). Por último, hay que tener en cuenta la salvedad que hace el art. 60 al efecto de que nada de lo establecido en el mismo "se entenderá en violación de los derechos de herencia establecidos por el Código Civil y de las acciones que son consecuencia de los mismos". Como en el caso de autos no está envuelto el art. 60 ni la regla 17 (*j*), no expresamos ahora criterio alguno sobre estos problemas. Cf. *Cedeño* v. *Tropical City Industry, Inc.*, 71 D.P.R. 626 (1950); *Díaz* v. *Autoridad de Fuentes Fluviales*, 71 D.P.R. 931 (1950); *Fournier* v. *Fournier*, 78 D.P.R. 430 (1955).

de la vida perdida". En *Soto* v. *Lucchetti*, 58 D.P.R. 713 (1941) se extendió dicha regla a las acciones por muerte ilegal en que los demandantes basan su derecho de indemnización exclusivamente en la pérdida de alimentos, y no alegan ser herederos del difunto. Allí expresamos que ". . . no proceden dos acciones separadas, sino una conjunta, y que debe alegarse no sólo la condición de heredero o herederos y dependiente o dependientes si que además que los demandantes son los únicos herederos o dependientes del finado". Véanse además *Rodríguez* v. *Ell Tee, Inc.*, 57 D.P.R. 948, 954–955 (1941); *Rivera* v. *Olabarrieta*, 58 D.P.R. 432, 444–445 (1941); *Cordero* v. *American Railroad Co. of P. R.*; 66 D.P.R. 460, 463, 465 (1946); *Roses* v. *Juliá*, 67 D.P.R. 518 (1947); *Acosta* v. *Crespo*, 70 D.P.R. 239, 258 (1949).

La única forma de seguir manteniendo dicha doctrina jurisprudencial sería resolviendo que el art. 61 del Código de Enjuiciamiento Civil y la Regla 17 (*k*) limitan o restringen el alcance del art. 1802. Por los motivos que expusimos en el caso de *Travieso* v. *Del Toro*, supra,—y que sería inútil repetir aquí—no podemos aceptar esa conclusión. Allí indicamos que las aludidas disposiciones procesales no se refieren a los "herederos" en el sentido técnico de ese concepto, sino al grupo de personas que en virtud de sus relaciones con la víctima presuntiva o probablemente han sufrido daños y perjuicios. Véase además *Vázquez* v. *Pueblo*, 76 D.P.R. 594 (1954). Ya en *Orta* v. *P. R. Ry., Lt. & P. Co.*, 36 D.P.R. 743, 753–755 (1927), refiriéndonos a los arts. 60 y 61 del Código de Enjuiciamiento Civil, habíamos advertido: ". . . tal vez concedan el derecho a entablar una causa de acción a personas que anteriormente no lo tenían e impidan que otras personas ejerzan derechos similares. No hallamos nada en estos artículos que demuestren que la Legislatura pensara que estaba creando una causa de acción por primera vez. Por el contrario, la Legislatura tiene que haber sabido que existía el art. 1803 del Código Civil y no trató de derogarlo o de

restringirlo".(³)   De todos modos, cuando los demandantes como en el caso de autos, sólo reclaman por los daños y perjuicios que sufrieron personalmente como consecuencia de la muerte ilegal y no reclaman indemnización alguna por los daños que sufrió la víctima, obviamente no actúan como "herederos".   Eso basta para que sean inaplicables las disposiciones contenidas en la Regla 17 (*k*) y en el art. 61 del Código de Enjuiciamiento Civil.   Y como la acción de indemnización entonces depende exclusivamente de lo dispuesto en el art. 1802 del Código Civil, no existe base jurídica alguna para resolver que sólo existe una causa de acción común a favor de todas las personas a quienes la muerte ilegal haya causado por repercusión perjuicios materiales o morales.

■■   Para impedir que un número interminable de personas pueda instar acción como consecuencia de un solo acto torticero que cause la muerte de otra persona, basta sencillamente exigir a cada demandante que justifique cumplidamente la realidad de los daños que alega.   Así, en cuanto a los daños morales es imprescindible probar sufrimientos y angustias morales profundas y no bastaría una pena pasajera como base de la acción.   Por otra parte, el círculo de personas que puede instar una acción para exigir responsabilidad está restringido por el requisito de que debe probarse un vínculo de parentesco con la víctima y por el hecho de que, de ordinario, los daños materiales y morales sólo refluyen sobre los parientes más próximos de ésta.   El temor de que

---

(³) A pesar de lo que se declaró en el caso de de *Travieso,* supra, quizás podrían armonizarse mejor los principios de nuestro derecho sustantivo con las reglas procesales del citado art. 61, si adoptáramos la teoría de que existe una acción para recobrar los perjuicios causados a la víctima inicial por la lesión mortal, que se transmite y pertenece a sus herederos como si se tratase de uno de los bienes del patrimonio del difunto.   Así se explicaría por qué el art. 61 concede una acción de daños y perjuicios a los herederos del interfecto.   Todo ello en adición al resarcimiento que concede el art. 1802 por los perjuicios personales que sufran, por repercusión, otras personas afectadas por la muerte de la víctima inicial.   Pero ya hemos dicho que ese problema no está ahora ante nos, y que no procede hacer ningún pronunciamiento sobre el mismo.   Véase el escolio núm. 1, supra.

pueda surgir una multiplicidad de acciones no es base para denegar el resarcimiento de daños. Cf. *Rivera v. Rossi*, 64 D.P.R. 718, 725–726 (1945); *Travieso* v. *Del Toro*, supra, 1027; *Vázquez* v. *Pueblo*, supra, 601–603. Y no podríamos privar a los demandantes de indemnización, por las pérdidas que a ellos personalmente les causó la muerte de su hija, sin cometer una injusticia y sin violar además el precepto jurídico que consagra el art. 1802: todo perjuicio sufrido por culpa de otro da lugar a reparación.

*Debe revocarse la sentencia apelada y devolverse el caso al Tribunal Superior para ulteriores procedimientos compatibles con lo expresado en esta opinión.*

Los Jueces Asociados Sres. Marrero y Pérez Pimentel no intervinieron.