COLÓN ET AL., DEMANDANTES Y APELANTES, *v.* PORTO RICO RAILWAY, LIGHT & POWER COMPANY, DEMANDADA Y APELADA.

APELACIÓN procedente de la Corte de Distrito de San Juan, Sección 1ª., en pleito sobre daños y perjuicios.

No. 1564.—Resuelto en abril 8, 1918.

CUESTIONES LITIGIOSAS DEJADAS DE RESOLVER—OBJECIÓN—RENUNCIA.—Cualquier error que se haya cometido por parte del juez sentenciador en dejar sin decidir cualquier cuestión litigiosa sustancial que le hayan sometido las partes, puede estimarse renunciado en defecto de alguna objeción o esfuerzo para corregir la omisión en la corte inferior.

DAÑOS Y PERJUICIOS—ACCIÓN POR MUERTE ILEGAL—DAÑOS EJEMPLARES, PUNITIVOS O VINDICATORIOS.—Es un principio bien establecido el que en una acción derivada de un estatuto que concede el derecho de acción por la muerte ocasionada por un acto ilegal, no pueden obtenerse daños ejemplares, punitivos o vindicatorios a menos que el estatuto o la constitución, bien expresa o implícitamente, autorice su recuperación.

ID.—ID.—OBLIGACIÓN DE UN PRINCIPAL PARA CON QUIEN NO ES SU EMPLEADO.—Un principal no tiene obligación alguna para con quien, sin promover o proteger algún legítimo interés suyo, voluntariamente ayuda a un empleado, salvo, por supuesto, la obligación de no causarle desconsiderada o voluntariamente algún perjuicio.

Los hechos están expresados en la opinión.

Abogado de los apelantes: *Sr. Rafael Guillermety.*

Abogados de la apelada: *Sres. J. H. Brown* y *Pedro Amado Rivera.*

EL JUEZ ASOCIADO SR. HUTCHISON, emitió la opinión del tribunal.

En Caguas fecha 22 de octubre de 1913, mientras un capataz de la Porto Rico Railway Light & Power Company encargado de varios hombres estaba sustituyendo postes nuevos por postes viejos, Epifanio Colón vino a decirle que en otro sitio los alambres de la Compañía demandada se cruzaban con los del Telégrafo Insular o de la Compañía del Teléfono y a requerirle para que separase el contacto de modo que se pudiesen hacer ciertas conexiones.

Puede admitirse que el capataz se negó a abandonar el trabajo que tenía entre manos y sugirió y aún insistió como requisito previo a la pronta atención del otro asunto que le ayudase Colón en el cambio de los alambres eléctricos.

Siguiendo cualquier conversación que haya tenido lugar. Colón subió a uno de los postes eléctricos, y luego de haber quitado uno o más de los alambres y antes de que quitase los demás fué muerto.

El Dr. Simón Moret, que vió al cadáver en el mismo sitio y que posteriormente practicó la autopsia pero que no compareció a la vista del caso, certificó que la muerte fué debida a un choque o conmoción eléctrica (*shock*). El médico que representaba a la compañía demandada en la autopsia declaró que la muerte fué debida a la fractura del cráneo y manifestó que el doctor ausente, a la fecha en que se practicó la autopsia convino en que no existía indicio de conmoción eléctrica. Se demostró también con testigos de la defensa sin contradicción o impugnación alguna que los alambres de alta tención se habían cortado antes de empezar el trabajo, y que los demás sólo cargaban ciento diez *volts* y que después del accidente se hizo el cambio por completo sin ninguna dificultad. Por otra parte el testimonio de testigos oculares del demandante, de ser cierto, indica claramente el contacto

con una corriente de mayor intensidad. Más cualquiera que haya sido la causa próxima de la muerte, la prueba en su totalidad apenas si podría sostener la teoría del desconsiderado o voluntario perjuicio.

La corte de distrito dictó sentencia en favor del demandado por el fundamento de que no se demostró que la demandante hubiera sufrido alguna pérdida pecuniaria. Ninguna otra cuestión litigiosa fué resuelta ni insistieron los demandantes en la corte de distrito en que ninguna otra cuestión litigiosa fuese determinada.

Dado el criterio que tenemos de la cuestión, no necesitamos discutir en detalle los supuestos nueve errores apuntados por el apelante, ni intentar ahora determinar por adelantado las reglas y principios por los que hayan de regirse en lo futuro casos en que estén envueltos hechos distintos.

Cualquier error que se haya cometido por parte del juez sentenciador en dejar sin decidir cualquier cuestión litigiosa sustancial que le hayan sometido las partes, puede estimarse renunciado en defecto de alguna objeción o esfuerzo para corregir la omisión en la corte inferior.

Pero la corte sentenciadora implícitamente al menos declaró que no se podían cobrar daños punitivos en acciones de esta índole, y discutió asimismo sin decidir la cuestión de los daños nominales. Los apelantes se quejan de esta falta e implícita negativa en conceder ni daños ejemplares ni nominales.

Aparte de la sugestión, *supra,* respecto a la falta de prueba suficiente para sostener la teoría del desconsiderado o voluntario perjuicio, "está bien establecido el principio de que en una acción derivada de un estatuto que concede el derecho de acción por la muerte ocasionada por un acto ilegal, no pueden obtenerse daños ejemplares, punitivos o vindicatorios a menos que el estatuto o la constitución ora expresa o implícitamente autorice su recuperación. Algunas cortes este principio lo han fundado hasta cierto punto en el lenguaje peculiar en que se halla redactado el estatuto

que concede los daños y perjuicios, pero por lo general se le hace descansar en la naturaleza del derecho de acción estatutorio por la muerte ilegal. Como ya se ha visto, el derecho conferido comúnmente se considera como nuevo y no como un derecho transmitido. La teoría generalmente adoptada, de que los daños y perjuicios que pueden recobrarse lo son por las pérdidas pecuniarias sufridas por los beneficiarios, necesariamente excluye toda retribución como castigo al demandado." 8 R. C. L. 844, Sec. 120.

De los autos aparece concluyentemente que el capataz era un empleado antiguo y de experiencia, que hasta entonces había observado buena conducta; que el capataz no tenía autorización alguna para emplear a nadie en trabajos de la compañía sino que por el contrario tenía órdenes de no permitir a personas extrañas subir a los postes; que el día del accidente tenía bajo su mando un suficiente número de empleados de la compañía; que Colón no era empleado de la mencionada compañía; y que el poste a que subió y todos los alambres adheridos al mismo pertenecían exclusivamente a la demandada.

El trabajo que llevó a cabo el capataz no tenía el carácter de urgente necesidad. No aparece nada que sugiera la idea de que la compañía demandada era en forma alguna responsable por el inconveniente que produjo el mensaje traído por Colón. Los autos no revelan deber alguno por parte del capataz de cumplir con lo que se le pidió. Tampoco aparece que fuese urgente el asunto, o de alguna importancia especial o de otro modo de una naturaleza que justificase la hipótesis de que Colón al tratar de facilitar el trabajo de la compañía demandada actuaba en beneficio de su propio interés, o del de su principal hasta el extremo de que su posición pasara de un simple ayudante voluntario (*volunteer*) a la de una persona interesada a quien se le permiten ciertos privilegios o licencias (*licenses*).

"Es suficiente decir que ordinariamente un principal no tiene obligación alguna para con quien, sin promover o pro-

teger algún legítimo interés suyo, voluntariamente ayuda a un empleado, salvo, por supuesto, la obligación de no causarle desconsiderada o voluntariamente algún perjuicio." Nota al caso de *Hunter* v. *Corrigan,* 43 L. R. A. (N. S.) 187.

No existía base alguna para conceder daños nominales.

No encontramos error alguno que justifique la revocación de la sentencia recurrida, por lo que la misma debe ser confirmada.

*Confirmada la sentencia apelada.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados Wolf, del Toro y Aldrey.