Opinión disidente emitida por la
Jueza Asociada Señora Fiol Matta,
a la cual se une el Juez Presidente Señor Hernández Denton.
Disiento enérgicamente de la opinión del Tribunal en el presente caso. La controversia de derecho presentada ante nuestra consideración exige que determinemos si la esposa de un empleado despedido en contravención a un estatuto laboral aprobado por el congreso federal puede reclamar al expatrono de su cónyuge la compensación de sus propias angustias mentales; ello cuando el estatuto federal no concede al empleado el derecho a reclamar por daños, pero tampoco ocupa el campo ni descarta el derecho que pudie-ran tener los familiares. Una mayoría de este Tribunal concluye que la reclamación de la esposa no se puede con-siderar según el Artículo 1802 del Código Civil de Puerto *268 Rico, 31 LPRA sec. 5141, porque la legislación laboral no contempla esa posibilidad para el empleado. Con tal proceder, se deroga, por fíat judicial, la causa de acción independiente del cónyuge de un empleado concedida por nuestro Código Civil, trasplantando a la normativa general sobre responsabilidad civil la normativa laboral, adoptada por legislación especial, a pesar de que el estatuto laboral especial no excluye la causa de acción que nos ocupa. Claramente, ese proceder es una prerrogativa de la Rama Legis-lativa y la Legislatura no ha aprobado ningún estatuto en ese sentido. Por eso, me parece impropio resolver que una causa de acción por daños que incluya angustias mentales, presentada al amparo de nuestro Código Civil por el cónyuge de un empleado despedido, dependa totalmente de que la legislación laboral reconozca que el empleado tiene una causa de acción similar.
I
Aun cuando los hechos no están en controversia y están expuestos en los dictámenes del foro federal, resulta útil hacer un recuento de estos y de los fundamentos legales expresados en las etapas previas a esta certificación para poner en contexto la controversia jurídica que debemos resolver.
El Sr. Juan C. Pagán Colón (señor Pagán) comenzó a trabajar en Walgreens de San Patricio, Inc. (Walgreens) en septiembre de 2000. Al momento de su despido en el 2008, ocupaba la posición de asistente de gerente en la tienda de Juana Díaz. El 10 de mayo de 2008, el señor Pagán se reportó a trabajar en el horario de 4:00 de la mañana a 2:00 de la tarde. Durante las primeras horas de su turno, sintió dolores de pecho, palpitaciones en el corazón y sudoración frecuente.(1) Por esa razón, a la hora de tomar el *269 receso, alrededor de las 9:00 de la mañana, acudió a la sala de emergencias del Hospital Damas en Ponce sin infor-marlo en el trabajo. En la sala de emergencias, el señor Pagán fue atendido por altos niveles de azúcar en la sangre y alta presión arterial. Se le recomendó permanecer bajo observación y someterse a otras evaluaciones.
Mientras era atendido, el señor Pagán llamó a su es-posa, la Sra. Ada I. Renta Bonilla (señora Renta), quien llegó a la sala de emergencias. El señor Pagán le pidió a su esposa que llamara al Sr. Edwin Figueroa, gerente de Walgreens en Juana Díaz (señor Figueroa), para que le infor-mara que lo estaban atendiendo en la sala de emergencias y que no sabía si regresaría a trabajar. En una primera llamada, la señora Renta habló con el señor Figueroa. Durante ese día, la señora Renta llamó dos veces más al tra-bajo de su esposo para informar su estado de salud, ade-más de la eventual admisión de este al hospital.(2)
El 16 de mayo de 2008, el señor Pagán fue sometido a un estudio de cateterismo cardiaco bajo anestesia general y fue dado de alta del hospital el 17 de mayo de 2008. Durante su estadía en el hospital, el señor Pagán habló con una compañera de trabajo y con el Sr. Giovanni Rivera, asistente de gerente, quien tuvo conocimiento de que el señor Pagán iba a ser sometido al cateterismo.
El día que le dieron de alta, el señor Pagán fue a la farmacia Walgreens de Juana Díaz para comprar un medicamento. Allí le informó a Mariel Colón, asistente de gerente, que el médico le había ordenado una semana de descanso. En ese momento, la señora Colón era la em-pleada gerencial con mayor rango presente en la tienda. *270 Además, el señor Pagán le entregó a la secretaria, Sra. Wanda Santiago, el certificado médico que justificaba las ausencias durante su hospitalización.
No obstante, el 19 de mayo de 2008, el señor Figueroa redactó una carta dirigida al señor Pagán en la que le daba un periodo de 48 horas para que informara sobre su paradero en los días que estuvo ausente y para informarle su derecho a una licencia por incapacidad, además de aperci-birle sobre las consecuencias negativas en su empleo de no cumplir con lo solicitado.(3) El 23 de mayo de 2008, el señor Pagán llegó a Walgreens para entregar un certificado mé-dico preparado por una endocrinóloga que justifica las au-sencias para descanso en los días posteriores a su hospitalización. En ese momento el señor Pagán informó que estaba disponible para regresar a trabajar el próximo día y solicitó que le asignaran un turno. La Sra. Ivelisse López recibió el certificado médico y ofreció comunicarse más tarde con él para poder consultar con el señor Figueroa el itinerario de trabajo que se le asignaría.
Ese día, el señor Figueroa recibió el certificado médico y consultó con la Sra. Ada Colón, gerente de distrito, el estatus de empleo del señor Pagán. Luego de esa llamada, el señor Figueroa decidió despedir al señor Pagán. Por eso, la señora López llamó al señor Pagán para informarle que se reportara el próximo día a las 8:00 de la mañana para reunirse con el señor Figueroa. Ese 24 de mayo de 2008, el señor Figueroa despidió al señor Pagán sin ofrecerle las razones de la decisión, solo instruyéndole que llamara a las oficinas centrales de Walgreens si tenía alguna pregunta.
Luego de intentar infructuosamente de comunicarse con las oficinas centrales, el señor Pagán y su esposa acudieron personalmente al lugar. Allí, le entregaron a Miriam Díaz, Directora de Recursos Humanos, los dos certificados médi *271 cos que excusaban al señor Pagán desde el 10 al 23 de mayo de 2008. La señora Díaz se reunió con el señor Figueroa y le recomendó que permitiera al señor Pagán explicar sus ausencias. Así lo hizo el señor Figueroa, pero concluyó que las explicaciones que ofreció el señor Pagán en cuanto a las personas a quienes había notificado sobre su hospitalización eran inconsistentes. Determinó entonces que el señor Pagán estaba mintiendo y confirmó su despido.
El señor Pagán solicitó los beneficios de desempleo en el Departamento del Trabajo (DT). Originalmente, Walgreens notificó que el despido respondió a que el señor Pagán había abandonado su trabajo. Después de la reunión entre el señor Pagán y el señor Figueroa, Walgreens informó al DT que la razón del despido estuvo basada en la conducta deshonesta del empleado en cuanto a las razones de su ausencia y por unas violaciones anteriores al reglamento de personal. Sin embargo, el DT concedió el beneficio de des-empleo al señor Pagán luego de concluir que su despido no fue el resultado de una conducta impropia. Walgreens no apeló de esa determinación.
El señor Pagán, la señora Renta y la Sociedad Legal de Gananciales compuesta por ambos instaron una demanda en contra de Walgreens en el Tribunal Federal para el Dis-trito de Puerto Rico por represalias bajo el Family and Medical Leave Act (FMLA), por daños al amparo de los Artículos 1802 y 1803 del Código Civil de Puerto Rico, 31 LPRA secs. 5141-5142, y por despido injustificado conforme la Ley Núm. 80 de 30 de mayo de 1976 (29 LPRA sec. 185a et seq.).(4) En cuanto a la causa de acción de la esposa, al amparo de los Artículos 1802 y 1803, específicamente alegaron que ella sufrió y continuará sufriendo daños emocionales y económicos como resultado de la conducta exhi- *272 bida por Walgreens en contra del señor Pagán. Estimaron los daños en $200,000.(5)
Atendidas unas solicitudes de sentencia sumaria, el tribunal de distrito desestimó específicamente las causas de acción de la señora Renta. El foro federal concluyó que la señora Renta no tiene derecho a una compensación por da-ños porque el señor Pagán no tiene derecho a ello bajo la FMLA. Este estatuto provee un remedio exclusivo que no incluye la compensación de los daños emocionales del empleado. Según el foro federal, la esposa no tiene una causa de acción en contra de Walgreens, porque las accio-nes de esa empresa que dieron base a su demanda no son distintas a las que se alegaron como para sustentar la re-clamación del esposo.(6)
Celebrado el juicio, el Jurado emitió un veredicto a favor del señor Pagán en cuanto a la causa de acción al amparo del FMLA. Como este había desistido de la causa de acción de la Ley Núm. 80, el tribunal desestimó la de daños.
El señor Pagán y la señora Renta recurrieron al Tribunal Federal para el Primer Circuito para apelar, entre otras cosas, de la denegación de la causa de acción por los daños emocionales de la esposad.(7) El foro apelativo federal *273 concluyó que un reclamante bajo el estatuto FMLA no tiene derecho a una compensación por daños emo-cionales.(8) No obstante, reconoció que este Tribunal Supremo ha resuelto que un familiar de un empleado agra-viado por discrimen en el empleo tiene, en ciertas circuns-tancias, una causa de acción en daños al amparo del Artículo 1802, supra.(9)
De esa forma, el Tribunal Federal para el Primer Cir-cuito se planteó que existe una controversia sobre el dere-cho de un familiar a reclamar por daños emocionales al amparo del Artículo 1802 de nuestro Código Civil, supra, cuando el estatuto federal por el cual reclama el empleado no provee un remedio en daños y decidió reservar su fallo en cuanto a la causa de acción en daños de la señora Renta y someter ante este Tribunal la presente certificación.
II
La Asamblea Legislativa de Puerto Rico se ha ocupado de regular con bastante detalle la relación obrero-patronal. Las numerosas leyes especiales laborales en nuestro ordenamiento jurídico componen un esquema comprehensivo e integrado que sustituye la normativa del Código Civil a favor de un régimen estatutario especial. En particular, se trata de una serie de acuerdos para preservar la paz laboral y la protección de las trabajadoras y los trabajadores, de forma que no se tenga que recurrir al Código Civil como fuente legal primaria, pues, por consideraciones de política pública, la Asamblea Legislativa entendió que hacía falta *274 un diseño legislativo dstinto que protegiera adecuada-mente ciertos intereses fundamentales.(10)
No hay duda de que, por acción legislativa, las disposiciones del Código Civil fueron sustituidas como derecho primario para regular la relación obrero-patronal. Por eso en esos casos, en vez de recurrir al Código Civil, se recurre principalmente a la legislación especial. Claro está, ello no quita que cuando la legislación especial no aplique, regre-semos al Código Civil como fuente supletoria.(11) ¿Qué pasa, entonces, cuando la Asamblea Legislativa no ha sus-tituido el derecho establecido en el Código Civil, como su-cede cuando son los familiares del empleado quienes su-fren los daños? Recordemos que, en el contexto obrero-patronal, la Asamblea Legislativa desplazó el derecho civil a favor de una legislación especial referente a la relación entre el patrono y un empleado. Fue una decisión de polí- *275 tica pública que la legislatura no ha tomado en cuanto a los familiares del obrero. Mientras esto no ocurra, tenemos que recurrir al Código Civil para resolver los planteamien-tos de estas personas.
En Santini Rivera v. Serv Air, Inc., 137 DPR 1 (1994), notamos que la legislación especial aplicable al discrimen en el empleo —la Ley Núm. 100 (29 LPRA sec. 146 et seq.)— “carece de referencias a los parientes de los obreros protegidos”. (Énfasis suprimido).(12) Igual ocurre en muchas leyes laborales, sean puertorriqueñas —como la Ley Núm. 80 sobre despido injustificado— o federales —entre estas la FMLA — . Con respecto a la Ley Núm. 100, en Santini Rivera explicamos que
[l]a ausencia de esa referencia en la Ley Núm. 100, supra, sobre los parientes de los trabajadores se explica precisamente por la naturaleza y propósitos de esa ley. Esta legislación en cuestión es exclusivamente de índole laboral. Su objeto es la relación obrero-patronal. Está dirigida a tratar únicamente los derechos de los empleados y ofrecer particular protección a sus intereses. No tiene, pues nada que ver, con terceros u otras personas que no sean empleados. (Enfasis en el original supri-mido y énfasis suplido).(13)
En cuanto la fuente de derecho aplicable cuando se analiza una causa de acción en daños presentada por un pariente contra el patrono, dijimos en ese caso: “Precisamen-te porque tal es su ámbito y esencia, no tiene sentido alguno intentar la dilucidación de la situación jurídica de los parientes de los obreros, en el contexto de la citada Ley Núm. 100. Como no les aplica, no puede ser fuente de derechos para los parientes”(14) Continuamos explicando que “[l]os derechos de los parientes de los obreros no son apéndice del contrato laboral ni emanan supletoriamente o de modo alguno de la referida legislación especial, por lo que no procede acudir a ella para decidir si los parientes de los *276 obreros tienen derechos o no”.(15) Es decir, para determinar el derecho de un pariente a ser indemnizado por los daños causados, no se recurrirá a la ley laboral especial, sino al Código Civil; claro está, a menos que la Asamblea Legisla-tiva disponga otra cosa, lo cual no ha ocurrido.(16) En Santini Rivera resolvimos que “[l]os derechos de los parientes [...] constituyen una normativa independiente que surge por su propia cuenta al amparo del [Artículo] 1802 del Código Civil, supra, conforme a los principios generales de la responsabilidad extracontractual. Es a esos principios y a ese artículo, a los cuales hay que acudir como fuentes de derecho, cuando se dilucida la situación jurídica del pariente del obrero”. (Énfasis suplido).(17) Evidentemente, la causa de acción de los parientes nace de un acto culposo o negligente del patrono que da base a una reclamación me-diante el Artículo 1802, independientemente de que esa actuación del patrono también de pie a la causa de acción del empleado y esté regulada por un ordenamiento laboral. El orden laboral no desplaza a las otras acciones.
De lo anterior podemos afirmar que, si bien la Asamblea Legislativa ha limitado el uso del Código Civil por los trabajadores cuando hay un conflicto con sus patronos, ello no ha ocurrido en cuanto a sus familiares. La causa de acción en daños del cónyuge de un empleado contra el patrono es independiente a la causa de acción del empleado. Y, hasta que otra cosa disponga la Asamblea Legislativa, estamos obligados a reconocer una causa de acción al amparo del Artículo 1802. Lo contrario sería realizar un acto legisla-tivo, pues, hasta ahora, la Asamblea Legislativa y el Con-greso han limitado su desplazamiento del derecho supletorio a las controversias entre empleados y patronos. No lo han hecho en cuanto a los familiares. Si se quiere ampliar *277 esa limitación para incluir al cónyuge y otros familiares, le corresponde a la Asamblea Legislativa hacerlo, sustitu-yendo el Artículo 1802 por algún otro esquema regulador para esos casos. De igual forma, le corresponde al Con-greso de los EEUU actuar, si quiere limitar el derecho de los familiares de un empleado a ser indemnizados por las angustias mentales producidas por un patrono.
Por tanto, es un error caracterizar la causa de acción de un familiar de un empleado —en este caso, un cónyuge— como meramente condicionada o supletoria a la de dicho empleado. En Maldonado v. Banco Central Corp., 138 DPR 268 (1995) examinamos la relación entre la causa de acción del empleado y la de su familiar. En ese caso, expresamos que la causa de acción del familiar guardaba relación de “contingencia” en cuanto a la acción del empleado, pero esta “contingencia” de ninguna manera niega que las dos causas de acción sean separadas e independientes como cuestión de derecho. La “contingencia” a la que hicimos re-ferencia en Maldonado se refiere a la necesidad de probar el acto culposo del patrono que, simultáneamente, requieren la Ley Núm. 100 y el Artículo 1802. Ese punto lo dejamos meridianamente claro al expresar que “[e]sta acción es contingente ya que si el empleado no prevalece, su consorte no puede reclamar por un discrimen no probado”. (Énfasis en el original suprimido y énfasis suplido).(18) Nótese que la contingencia en este contexto es una cuestión de hecho, no una condición o limitación.
La causa de acción del pariente no está sujeta a que la causa de acción del empleado prospere, sino a que el acto dañino sea probado. Por lo tanto, la causa de acción del empleado no da base a la del pariente, sino que tienen en común un hecho que da base tanto a una acción regulada por el ordenamiento laboral y a otra provista por el orde-namiento general. Es decir, que si se prueba que el patrono no discriminó, la causa de acción bajo el Artículo 1802, su *278 pra, no puede prevalecer, pues no hay acto culposo o negligente. Evidentemente, la relación de contingencia se limita a requerir que el empleado pruebe el discrimen. Una vez demostrado el discrimen como acto culposo, la consecuencia, es decir, el daño que este cause es individual, de manera que tanto el empleado como su familiar tienen que demostrar, separadamente, sus respectivos daños.(19) En cuanto a la posibilidad de que el empleado pueda ser indemnizado por sus angustias, hay que ver si la ley laboral especial lo permite. En el caso de los familiares, ante la ausencia de una ley especial aplicable, hay que determinar si el Código Civil avala su causa de acción.
Nuevamente, limitar la causa de acción del familiar co-rresponde a la Asamblea Legislativa. En ciertas circuns-tancias, la legislatura ha limitado las cuantías a pagarse a los trabajadores, desplazando al Código Civil. Es forzoso concluir que lo mismo tendría que ocurrir si se va a excluir del alcance del Artículo 1802, supra, a los familiares del empleado. Al fin y al cabo, el Artículo 1802 es una disposi-ción estatutaria de aplicación general. Para desplazarla, hace falta una legislación especial. Ya existen leyes espe-ciales que cobijan la relación obrero-patronal. No hay legis-lación especial análoga para los familiares; para ellos hay una legislación general: el Artículo 1802 del Código Civil.
En el contexto de la controversia ante nuestra consideración, el Congreso federal aprobó la FMLA, con su particular esquema remedial, como parte de su reglamentación de las relaciones obrero-patronales. Ni mencionó a los familiares ni desplazó la legislación estatal. Por lo tanto, estamos ante un caso en el que el empleado no puede recla-mar angustias mentales, aunque, en efecto, las haya sufrido. Pero el Congreso no hizo lo mismo con los familiares. Tampoco lo ha hecho la Asamblea Legislativa de Puerto Rico. No nos corresponde tomar esa decisión de claro corte legislativo. Lo que sí, nos corresponde es aplicar *279 la normativa vigente. Hasta tanto el Congreso federal o la Asamblea Legislativa de Puerto Rico sustituyan la ley general del Artículo 1802 del Código Civil, supra, es nuestro deber aplicarlo.
III
La opinión mayoritaria altera, de manera significativa, el alcance de nuestro ordenamiento jurídico sobre daños sin que la Asamblea Legislativa haya actuado sobre ello. Contrario a la conclusión a la que llega una mayoría de este Tribunal, contestaría en la afirmativa la pregunta cer-tificada por el Tribunal Federal para el Primer Circuito. Por lo tanto, proveería que la señora Renta sí tiene una causa de acción en daños, independiente a la de su esposo, al amparo del Artículo 1802 de nuestro Código Civil, supra, aun cuando el señor Pagán no tiene derecho a ello bajo el estatuto laboral federal por el cual reclamó contra su patrono. En Puerto Rico, el ordenamiento jurídico sobre daños generales está regulado por el Artículo 1802 de Có-digo Civil y reconoce que el perjuicio material y moral que causa un acto culposo o negligente puede refluir sobre va-rias personas. Por lo tanto, cada perjudicado adquiere una acción independiente contra el causante del daño, pues la fuente de la responsabilidad es precisamente el perjuicio particular y personal sufrido por cada uno de ellos.(20)
En fin, según nuestra fuente de derecho general de da-ños, la señora Renta tiene derecho a instar una acción contra Walgreens para reclamar los daños que sufriera por el despido de su esposo, el señor Pagán. En su día, la señora Renta tendrá que establecer, conforme a la normativa jurí-dica del Artículo 1802 de nuestro Código Civil, que el des-pido de su cónyuge fue un acto culposo o negligente, que sufrió unos daños y que estos fueron a causa de ese despido. No siendo este el resultado de la deliberación de este Tribunal, disiento.

 El señor Pagán padece de diabetes tipo II, condición que el patrono conoce desde que fue contratado.

 Entre las partes existe controversia en cuanto a una de esas dos llamadas. La señora Renta alegó que en una de sus llamadas habló con el Sr. Giovanni Rivera, asistente de gerente, y le informó sobre las atenciones médicas que estaba recibiendo su esposo. El señor Rivera negó haber recibido esa llamada. En la segunda llamada, la señora Renta habló con el Sr. Carlos Figueroa, empleado del departamento de fotografías, a quien le dijo que su esposo había sido hospitalizado y le informó el número de cuarto. El señor Figueroa alegó que nunca recibió esas llamadas ni la información que la señora Renta proveyó.

 Dicha carta se envió el 23 de mayo de 2008 y no fue hasta el 28 de mayo de 2008 que el señor Pagán la recibió. Según las determinaciones de hechos del tribunal de distrito federal, para el 19 de mayo de 2008 cuatro empleados gerenciales conocían la hospitalización del señor Pagán.

 En cuanto al señor Pagán, se reclaman en la demanda $1,000,000 por las violaciones al estatuto federal y $1,000,000 por los daños sufridos en la causa de acción al amparo de los Artículos 1802 y 1803 del Código Civil, 31 LPRA secs. 5141—5142.

 Se alega en la demanda que: “As direct and proximate cause of Walgreens aforementioned conduct against his husband, Plaintiff Renta Bonilla has suffered and will continued [sic] to suffer emotional and financial damages estimated at two hundred thousand dollars ($200,000.00) under this cause of action”.

 El Tribunal Federal para el Distrito de Puerto Rico desestimó la causa de acción de la señora Renta en cuanto a los daños emocionales. Nada dispuso en cuanto a los daños económicos, aun cuando en la demanda la esposa también alegó haber sufrido daños económicos. El Tribunal Federal para el Primer Circuito, en un escolio, concluyó que la señora Renta no alegó daños económicos distintos a los que el señor Pagán reclamó. El escolio 9 de la orden emitida por el Tribunal de Circuito el 4 de septiembre de 2012 lee: “The Complaint states that Renta ‘suffered and will continue to suffer emotional and financial damages.’ However, the plaintiffs failed to plead any facts showing a financial harm to Renta independent of that to her husband. The district court treated Renta’s Article 1802 claim as one seeking compensation for only emotional distress, and we will follow its lead”.

 Los señores Pagán-Renta apelaron también el que no se les hubiera concedido unos daños líquidos que provee el FMLA cuando se establece que la conducta exhibida por el patrono, en violación al FMLA, fue exhibida con intención. El Tribunal de Circuito se negó a conceder los daños líquidos. Entendió que aun cuando Walgreens violó el derecho del señor Pagán a una licencia sin sueldo conforme dis- *273 pone el FMLA, su conducta no fue intencional. Consideró, en vez, que se trató de una conducta novata o de “rookie” del señor Figueroa aun cuando este solicitó asesoría legal y consultó con los empleados gerenciales de mayor rango.

 Nevada Dept. of Human Resources v. Hibbs, 538 US 721 (2003) (“The cause of action under the FMLA is a restricted one: The damages recoverable are strictly defined and measured by actual monetary losses”).

 Cita a Santini Rivera v. Serv Air, Inc., 137 DPR 1 (1994).

 Así por ejemplo, nuestra Asamblea Legislativa tomó la decisión de política pública de sustituir el término prescriptivo de quince años aplicable a las acciones personales o contractuales, por términos más cortos (tres años en el Artículo 12 de la Ley Núm. 80 (29 LPRA sec. 1851)). Igualmente, en vez de mantener el peso de la prueba en el demandante, como correspondería en una acción por el Código Civil, se diseña un esquema probatorio favorable al empleado. Artículo 11 de la Ley Núm. 80 (29 LPRA sec. 185k). También, en vez de la concesión de daños y perjuicios al amparo del Código Civil, se limitan las cuantías indemnizables, de forma que se garantice un acceso directo de los empleados a sustento económico, mientras se limita la respon-sabilidad civil de los patronos. Ejemplo de esto es la mesada establecida por la Ley Núm. 80, lo que constituye, como regla general, el remedio exclusivo del empleado. Artículo 1 (29 LPRA sec. 185a). Incluso, en determinados casos, aplica una inmunidad patronal. Ley de Compensaciones por Accidentes del Trabajo, Ley Núm. 45 de 18 de abril de 1930, según enmendada, 11 LPRA secs. 20-21.

 Así lo reconoce la opinión mayoritaria al referirse a otras circunstancias en las que la mesada no es el remedio exclusivo en una acción por despido injustificado, como cuando hay violaciones a un derecho constitucional o cuando otra ley especial lo provee. Claro está, sabemos que esas no son las únicas excepciones a esta regla general, pues si el patrono ocasiona un daño independiente al acto del despido, como sería incurrir en alguna agresión, podría ser demandado mediante el Artículo 1802 de nuestro Código Civil, 31 LPRA sec. 5141. Porto y Siurano v. Bentley P.R., Inc., 132 DPR 331 (1992). Cabe destacar que esta norma aplica en los EEUU cuando el patrono incurre en un “tort” independiente al despido, como sería el “intentional infliction of emotional distress”. Por otra parte, si no hubiera legislación protectora del empleo, vendríamos obligados a recurrir a la teoría general de las obligaciones y los contratos o a la figura del contrato de arrendamiento de servicios. López Fantauzzi v. 100% Natural, 181 DPR 2, 107 (2011). En ese caso resolvimos claramente que cuando la Ley Núm. 80 —legislación especial-— no aplica, corresponde ir a las fuentes de derecho supletorio en Puerto Rico.

 Santini Rivera v. Serv Air, Inc., supra, pág. 5.

 Íd.

 Íd.

 Íd.

 por ejemplo, la Asamblea Legislativa podría incluir a los familiares en la propia ley especial laboral o aprobar un esquema remedial independiente para ellos.

 Rivera Santini, supra, págs. 5-6.

 Maldonado, supra, pág. 276.

 Véase S.L.G. Serrano-Báez v. Foot Locker, 182 DPR 824 (2011).

 Hernández v. Fournier, 80 DPR 93 (1957).